UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADWEEK LLC, a Delaware limited liability company, | Civil Action No. 1:18-cv-9923 |
| Plaintiff | **COMPLAINT FOR STATE AND FEDERAL TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; FALSE ADVERTISING; DECEPTIVE TRADE PRACTICES; UNFAIR COMPETITION; DEFAMATION** |
| v. | |
| CARNYX GROUP LIMITED, a UK company, doing business as THE DRUM, a New York company, CARNYX Inc., a Delaware corporation, and Gordon Young a U.K. citizen, | |
| | JURY TRIAL DEMANDED |
| Defendants | |

ADWEEK LLC (hereinafter referred to as "Plaintiff") brings forth this action against CARNYX GROUP LIMITED, doing business as THE DRUM in New York, CARNYX Inc., a subsidiary of CARNYX GROUP LIMITED, and GORDON YOUNG (hereinafter collectively referred to as "Defendants") and complain and allege as follows:

## INTRODUCTION

1.     This is an action for federal trademark infringement, false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*.; common law trademark infringement under the laws of New York; unfair competition and defamation under the laws of New York against Carnyx Group Limited, doing business as The Drum in New York, Carnyx Inc., and Gordon Young.

## PARTIES

2.     Plaintiff Adweek LLC is a Delaware Limited Liability Company having a place of business at 825 8th Avenue, New York, New York 10019.

1

3.      Upon information and belief, Defendant Carnyx Group Limited is a private limited company organized under the laws of the United Kingdom in 1985, having a place of business at 4th Floor - the Mercat Building 26 Gallowgate Glasgow G1 5Ab United Kingdom and having a place of business at 1460 Broadway, Suite 15042, New York, NY, 10036.

4.      Upon information and belief, Defendant The Drum is a company operating in New York as an assumed name of Carnyx Group Limited and/or Carnyx Inc., having a place of business at 1460 Broadway, Suite 15042, New York, NY, 10036.

5.      Upon information and belief, Defendant Carnyx Inc. is a Delaware corporation authorized to do business in the State of New York, is doing business as "The Drum" in New York, and is a subsidiary of Carnyx Group Limited, having a place of business at 1460 Broadway, Suite 15042, New York, NY, 10036.

6.      Upon information and belief, Defendant Gordon Young, whose primary residence is unknown, is the Editor-in-Chief and Co-Founder of The Drum in New York, a division of Carnyx Group Limited and/or Carnyx Inc., having a place of business at 1460 Broadway, Suite 15042, New York, NY, 10036.

7.      Plaintiff reserves the right to add additional defendants as their identities become known.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1338 over the Lanham Act claims because the action alleges *inter alia* violations of federal statutes; and the Court has jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 over the state law claims because they arise out of the same nucleus of operative fact and are so related to the federal cause of action that they form the same case or controversy.

2

9.      Venue is proper in this judicial district under 28 U.S.C. § § 1391, 1400(b) because a substantial part of the events giving rise to the claims raised in the lawsuit occurred in this judicial district, and because Defendants conduct business in this district and Defendants' actions have injured Plaintiffs whose events are in this judicial district and Defendants are subject to jurisdiction in this district.

10.     Upon information and belief, this Court has jurisdiction over each and every one of the Defendants because Defendants committed acts of trademark infringement and unfair competition in this district, causing injury to Plaintiff in this state and district; and upon information and belief, Defendants are authorized to do business in this district, maintain offices in this district, regularly transact business and have purposely targeted its activities in this state and district,  advertise and sell the services at issue through advertisements and promotions, conducts business at summits in New York (see https://beat.thedrum.com/awny-bing-microsoft), hired Reporters in New York (see https://www.thedrum.com/jobs/details/187644/reporter-us.html and attached as Exhibit 3), provide an online website, magazine and awards via the Internet to New York residents, New York advertising industry people and New York entities. In addition, Defendants have purposely directed their actions to unlawfully trade off on Plaintiff's trademark and used it for the promotion, advertising and endorsement of their own publication and services and to dilute and tarnish Plaintiff's trademark in violation of the Lanham Act, State Trademark and unfair competition laws.

11.     Personal Jurisdiction over Carnyx Group Limited is found in New York at least because Carnyx Group Limited is doing business as "The Drum" in New York City, has offices in New York City and conducts business in New York.

12.     Personal Jurisdiction over The Drum is found in New York at least because The

Drum has offices in New York City and conducts business in New York.

13.     Personal Jurisdiction over Carnyx Inc. is found in New York at least because Carnyx Inc. is authorized to do business in New York and is the holding company for The Drum, having offices in New York and conducts business in New York.

14.     Personal Jurisdiction over Gordon Young is found in New York at least because Gordon Young is the editor and operator of "The Drum" operating in New York City, conducts business in New York and upon information and belief, Gordon Young frequently works at the New York City office at 1460 Broadway, Suite 15042, New York, NY, 10036.

15.     Defendants have purposely availed themselves to this state and this district at least because they have promoted the online magazine "The Drum" to consumers and persons in the marketing and advertising industry in this state and district.

FACTUAL BACKGROUND

16.     Plaintiff is the owner of the famous brand ADWEEK. Plaintiff is and has been the leading source of news, content, awards and events for marketing, media, and advertising professionals since 1978.  ADWEEK delivers insightful, forward-thinking content across various platforms, including websites, print magazines, iPad apps, newsletters, social media, original videos, events, conferences, awards, charts and mobile apps.  Plaintiff is the leader in the field.

17.     Plaintiff is the owner of the trademark ADWEEK and certain trademark registrations related thereto ("IP") shown in Exhibit 1.  The IP includes incontestable U.S. Trademark Registration Nos. 1,442,070 and 2,788,877for ADWEEK® for weekly magazines; incontestable U.S. Trademark Registration No. 2,997,512 for ADWEEK® for online magazines in the field of advertising and marketing; U.S. Trademark Registration No. 4,447,780 for ADWEEK® award programs, seminars, et al.

18.     Plaintiff and its predecessors have expended considerable resources marketing and promoting its highly successful ADWEEK® trademark, which is the leading source for news, insight and community for marketers, media and agencies and which has become famous in the industry around the world.  Plaintiff has expended considerable resources developing a worldwide portfolio of trademark protection that covers the ADWEEK® famous mark and brand.

19.     Plaintiff has continuously used its ADWEEK® trademark since use began in 1978 and has expended considerable resources promoting and advertising its brand.

20.     As a result of Plaintiff's continuous use of Plaintiff's ADWEEK® trademark, the inherent distinctiveness, the extent and duration of its use, geographic scope, extent of its advertising and sales, media publicity, exposure of the mark and consumer recognition, Plaintiff's ADWEEK® trademark is famous in the industry.

21.     Defendants operate a website, publishing business, online magazine,  award shows, live events, content marketing solutions, video production, research, learning networks, supplier finder services in the fields of marketing, advertising, media, technology, agencies, branding, marketers, CMO, digital media, social media, publishing, entertainment marketing, sports marketing, creative, design, programmatic, and mobile.  Defendants are a competitor of Plaintiff.  Attached as Exhibit 2 is evidence that Plaintiff is one of the Defendant's top competitors.

22.     Upon information and belief, Defendants have used the name "ADWEEK" in order to trade on the goodwill developed in ADWEEK® by Plaintiffs and Defendants have used ADWEEK® in its website, content, advertisements and marketing materials in order to trade off on the established goodwill of the Plaintiff's ADWEEK® trademark and brand.  Attached as

Exhibits 4, 6, 9, 11 and 12 is evidence of Defendants' unauthorized use of the name ADWEEK

and dozens of instances of infringement of ADWEEK, including, but not limited to, Defendants'

use of the name "**The Drum's Daily Adweek Digest**".

      23.     On November 8, 2017, Plaintiff sent a cease and desist letter to Defendants

requesting that Defendants cease and desist from using ADWEEK®.  A copy of the cease and

desist letter is attached hereto as Exhibit 5 and the evidence of infringement in that instance is

attached hereto as Exhibit 6.

      24.     On January 3, 2018, Gordon Young, CEO of Carnyx Group Limited and Stephen

Lepitak, Editor of The Drum, responded to the cease and desist letter and stated that all reference

to ADWEEK has been removed.  A copy of the reply correspondence is attached hereto as

Exhibit 7.

      25.     On September 25, 2018, Defendants posted content that again infringed the

ADWEEK® trademark.  Plaintiff sent a second cease and desist letter to Defendants on

September 27, 2018 requesting that Defendants cease and desist from using ADWEEK®.  A

copy of the cease and desist letter is attached hereto as Exhibit 8 and the evidence of

infringement in that instance is attached hereto as Exhibit 9.

      26.     On September 28, 2018 counsel for Defendants responded to the cease and desist

letter arguing that Plaintiff's ADWEEK® trademark is weak and that Defendant's use of

ADWEEK is nominative fair use and Defendants have not removed the infringing content.   A

copy of the reply correspondence is attached hereto as Exhibit 10.  A copy of the infringing post

remaining as of today is attached hereto as Exhibit 11.  Also attached as Exhibit 12 are

representative examples of how Defendants continuously use Plaintiff's ADWEEK® trademark

throughout Defendants' website and content, and examples of willful infringement as the

instances of infringement continue after Defendants received numerous cease and desist letters, including, but not limited to, Defendants' use of the name "**The Drum's Daily Adweek Digest**"; **"Adweek", "Adweek NY".**

27.  On October 18, 2018, Defendants posted content and an article containing a false claim and false endorsement of ADWEEK®.  Defendant claimed in an article that Plaintiff ADWEEK stated that Defendant, The Drum, is the third largest marketing platform in the US, to quote "Gordon Young, founder and editor-in-chief of The Drum, said: "The Drum, even according to Adweek, is already the third largest marketing platform in the US".  This statement is false.  Under no interpretation did Plaintiff endorse The Drum or state that The Drum is the third largest marketing platform in the US.  Defendant's printed a false endorsement and used Plaintiff's ADWEEK trademark and brand name for the purpose of trading off on Plaintiff's fame in the industry and to confuse the public into thinking that Plaintiff ranked and endorsed The Drum.  Plaintiff sent a third cease and desist letter to Defendants on October 18, 2018 requesting that Defendants remove the false quote.  A copy of the third cease and desist letter is attached hereto as Exhibit 13 and the evidence of infringement in that instance is attached hereto as Exhibit 14.

28.  On October 20, 2018, Defendant Gordon Young took the October 18, 2018 cease and desist letter and posted it on his LinkedIn page along with inaccurate and defamatory statements.  A copy of the post is attached as Exhibit 15.

It is clear to industry professionals that the statement is false and an industry professional clearly tried to educate Gordon Young on his inaccurate assessment of the law, specifically, Johan Ingles, a digital marketing professional commented on Gordon Young's post, to quote: "Gordon Young  - my own experience is that it's all about the reliability of the metrics ie how are

they audited when making such comparisons and also, second thing, lawyers might contend that it's more accurate to qualify your own 'already the third largest platform in the US' with according to similarweb data rather than according to adweek." The commentary is highlighted in Exhibit 15.

29.   Upon information and belief, Plaintiff and Defendants' services are provided in the same geographic areas, including the state of New York and the city of New York.

30.   Defendants' use of ADWEEK is likely to cause confusion, mistake or deception among the public who will be confused, mistaken and deceived into believing that Defendants' services are endorsed by, are sponsored by, affiliated with, and/or authorized by Plaintiff.

31.   Upon information and belief, Defendants' use of ADWEEK has misappropriated and continues to misappropriate the goodwill that Plaintiff has built in its usage of the ADWEEK® mark.

32.   Upon information and belief, Defendants' activities have caused and continue to cause irreparable injury to Plaintiff's reputation and goodwill.

33.   Upon information and belief, Defendants have profited and continue to profit from its unlawful acts.

34.   Defendants' use of ADWEEK, if not enjoined by this court, has mislead and will continue misleading the public and causing irreparable damage and harm to Plaintiff and the public.

35.   Upon information and belief, at the time Defendants adopted the names of ADWEEK, Defendants did so with full knowledge of Plaintiff's use of its ADWEEK mark and use of ADWEEK.COM and Plaintiff's existing rights to ADWEEK.

36.   An attorney representing Defendants responded to Plaintiff's counsel via e-mail and letter and argued that Defendants did not infringe Plaintiff's rights and that Defendants' use of ADWEEK is "fair use" whereas Plaintiff clearly owns exclusive and incontestable trademark registration rights.

37.   Defendants had notice of Plaintiff's inherent trademark rights and Plaintiff's Federal Trademark Registration rights prior to Defendants' use of ADWEEK and prior to Defendants' false endorsement claim in willful violation of Plaintiffs rights.

38.   The intentional and willful nature of Defendants' unlawful acts renders this an exceptional case within the meaning of 15 USC §1117(a).

## COUNT I
## Federal Trademark Infringement

39.   Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

40.   Defendants' use of ADWEEK constitutes trademark infringement and gives rise to a likelihood of confusion, deception, and mistake among the public.

41.   Upon information and belief, Defendants adopted and used the ADWEEK name with the willful purpose and intent of misleading the public and trading upon the goodwill and reputation associated with Plaintiff's Registrations.

42.   These acts violate the United States Lanham Act and constitute infringement of Plaintiff's registered trademark, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 *et seq.*

43.   As a result of Defendants' infringing activities, the public is likely to be and has already been confused, misled or deceived as to the source, origin or sponsorship of Defendants' services, and Plaintiff has suffered irreparable injury for which it has no adequate remedy at law.

44.     Upon information and belief, as a direct and proximate result of Defendants'
actions in misappropriating Plaintiff's trademark rights, Plaintiff will need to conduct a
corrective advertising campaign to alleviate existing and ongoing future confusion in the
marketplace, in an amount to be determined.

## COUNT II
## False Designation of Origin

45.     Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of
this Complaint and incorporates them herein by reference.

46.     Defendants' use of the ADWEEK name constitutes offering for sale and selling
services in interstate commerce using false and misleading descriptions and representations of
fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47.     Upon information and belief, Defendants adopted and used the ADWEEK with
the knowledge that it was misleading, and deceptive, and with the intent to compete unfairly with
Plaintiff and to misappropriate the goodwill of Plaintiff.

48.     Upon information and belief, Defendants posted content and an article containing
a false claim and false endorsement by ADWEEK®.  Such practice constitutes passing off and
false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

49.     As a result of Defendants' activities, the public is likely to be confused, misled, or
deceived about the sources of Defendants' services, and Plaintiff is now and will continue to
suffer irreparable injury to its goodwill and reputation, for which it has no adequate remedy at
law.

50.     Upon information and belief, as a direct and proximate result of Defendants'
actions, Plaintiff will need to conduct a corrective advertising campaign to alleviate existing and
ongoing future confusion in the marketplace, in an amount to be determined.

## COUNT III
## Trademark Infringement – New York Common Law

51.     Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

52.      This claim is against Defendants for common law trademark infringement.

53.     In addition to the Federal Registration owned by Plaintiff, as set forth above, Plaintiff's ADWEEK® mark enjoys common law rights in New York and throughout the United States.  These rights are senior and superior to any rights which Defendants may claim.

54.     Defendants' use of ADWEEK is intentionally designed to mimic Plaintiff's ADWEEK® mark so as to cause confusion regarding the source of Defendants' services in that purchasers thereof will be likely to associate or have associated such show with, as with originating with, or as approved by Plaintiff, all to the detriment of Plaintiff.

55.     Defendants' infringement will continue unless enjoined by the Court.

56.      Upon information and belief, as a direct and proximate result of Defendants' actions in misappropriating Plaintiff's trademark rights, Plaintiff will need to conduct a corrective advertising campaign to alleviate existing and ongoing future confusion in the marketplace, in an amount to be determined.

## COUNT IV
## Dilution

57.     Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

58.     The ADWEEK® mark has become famous and distinctive throughout the United States and throughout the world through Plaintiff's continuous and exclusive use of the mark in connection with Plaintiff's services and goods.

59.     Because Plaintiff's services have gained a reputation for excellence, the ADWEEK mark, which is always used in connection with Plaintiff's services defined above, have gained substantial fame, renown, and goodwill in the United States and throughout the world.

60.     Defendants' use of ADWEEK has caused and continues to cause irreparable injury to and dilution of the Plaintiff's ADWEEK® marks' distinctive quality in violation of Plaintiff's rights under 15 U.S.C. § 1125 (c).  Defendants' use of ADWEEK dilutes, blurs, and whittles away the distinctiveness of Plaintiff's ADWEEK mark.

61.     Defendants' use of ADWEEK has caused and continues to cause irreparable injury to and dilution of the Plaintiff's ADWEEK® marks' distinctive quality in violation of Plaintiffs' rights under 15 U.S.C. § 1125 (c).  Defendants' use of ADWEEK tarnishes Plaintiff's ADWEEK mark.

62.     As a direct and proximate result, Plaintiff has suffered and continue to suffer irreparable harm to its valuable ADWEEK mark.  Unless the ADWEEK name and the false quote are removed from all advertising, websites, content, and marketing materials, Plaintiff will continue to be irreparably harmed.

63.     Plaintiff has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if the signage, advertising, websites, content and marketing materials are not removed.

## COUNT V
## Injury to Business Reputation; Dilution NY Gen. Bus. Law. §360-L

64.     Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

65.     The ADWEEK® mark has become famous and distinctive in New York through Plaintiff's continuous and exclusive use of the mark in connection with Plaintiff's services and goods.

66.     Because Plaintiff's goods and services have gained a reputation for excellence, the ADWEEK mark, which is always used in connection with Plaintiff's goods and services defined above, have gained substantial fame, renown, and goodwill in New York.

67.     Defendants' use of ADWEEK trademark and false quote has caused and continues to cause irreparable injury to and dilution of the Plaintiff's ADWEEK marks' distinctive quality in violation of Plaintiff's rights under NY Gen. Bus. Law §360-L. Defendants' use of ADWEEK dilutes and tarnishes the distinctiveness of Plaintiff's ADWEEK mark.

68.     As a direct and proximate result, Plaintiff has suffered and continues to suffer irreparable harm to its valuable ADWEEK mark.  Unless the ADWEEK name and the false quote are removed from all advertising, websites, content, and marketing materials, Plaintiff will continue to be irreparably harmed.

69.     Plaintiff has no adequate remedy at law that will compensate it for the continued and irreparable harm it will suffer if the signage, advertising, websites, content and marketing materials are not removed.

## COUNT VI
## False Advertising 41 U.S.C. §1125(a)(1)

70.     Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

71.     Defendants posted content and an article containing a false claim and false endorsement by ADWEEK®.  Defendants claimed in an article that Plaintiff ADWEEK stated that Defendant, The Drum, is the third largest marketing platform in the US.

72.     This statement is false.  Under no interpretation did Plaintiff endorse The Drum or state that "The Drum is the third largest marketing platform in the US".   Defendants used a false endorsement and used Plaintiff's brand name for the purpose of trading off on Plaintiff's fame in the industry and to confuse the public into thinking that our client has ranked and endorsed The Drum.  Therefore, such quote used by Defendants is untrue, inaccurate and misleading.

73.     Thus, Defendants have knowingly and intentionally deceived consumers to believing that Plaintiff endorsed and ranked Defendants website.

74.     The foregoing actions by Defendants have caused harm to Plaintiff and its brand and have given Defendants' services a salable character it would not otherwise have without the false and misleading quote.

75.     These false and misleading advertising practices which misrepresents the nature, characteristics or qualities of Defendants' goods and services and commercial activities in violation of 41 U.S.C. §1125(a)(1)  have caused damage to Plaintiff.

## COUNT VII
### Deceptive Trade Practices – NY Gen. Bus. Law. §349

76.     Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

77.     Defendants used a false and misleading quote and falsely implied that the quote and endorsement came from Plaintiff.   Defendants posted content and an article containing a false claim and false endorsement of ADWEEK®.  Defendant claimed in an article that Plaintiff ADWEEK stated that Defendant, The Drum, is the third largest marketing platform in the US.

14

78.     This statement is false.  Under no interpretation did Plaintiff endorse The Drum or state that "The Drum is the third largest marketing platform in the US".   Defendants used a false endorsement and used Plaintiff's brand name for the purpose of trading off on Plaintiff's fame in the industry and to confuse the public into thinking that our client has ranked and endorsed The Drum.  Therefore, such quote used by Defendants is untrue, inaccurate and misleading.

79.     Thus, Defendants have knowingly and intentionally deceived consumers into believing that Plaintiff endorsed and ranked Defendants' website.

80.     The foregoing actions by Defendants have caused harm to Plaintiff and its brand and have given Defendant's services a salable character it would not otherwise have without the false and misleading quote.

81.     Therefore, Defendants' conduct also violated NY PEN §156 *et seq* which is a deceptive act or practices within the meaning of NY Gen. Bus. Law. §349.

82.     The prior counts to the complaint herein allege further deceptive acts and practices of the Defendants which violate NY Gen. Bus. Law. §349.

## COUNT VIII
## Unfair Competition

83.     Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

84.     Defendants' acts complained herein amount to a bad faith misappropriation of the labor, skill, expenditures and proprietary property of Plaintiff.

85.     Defendants have *inter alia*: used a confusingly similar brand; copied Plaintiff's trademark, trade dress and passed it off as its own; and falsely advertised illegitimate reviews.

86.     At all times relevant to the Complaint, Defendants' conduct was intentional and purposely directed at Plaintiff.

87.    Such conduct was done in bad faith and amounts to unfair actions by Defendants.

## COUNT IX
## Defamation Under New York Common Law

88.    Plaintiff repeats and re-alleges the allegations contained in the prior paragraphs of this Complaint and incorporates them herein by reference.

89.    All elements of defamation under New York Common Law are met.  Plaintiff has plead that Defendants have made (1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) 'of and concerning' to the plaintiff; (5) made with the applicable level of fault on the part of the speaker/writer; (6) either causing special harm or constituting slander per se; and (7) not protected by privilege".

As a direct and proximate result of the foregoing, Plaintiff has been damaged in an amount that is not as yet fully ascertained, but which Plaintiff believes exceeds $2,000,000 according to proof at trial, including the following: (a) Damage to its reputation, standing in the community and goodwill; and (b) Mental distress to Plaintiff's officers and directors.

90.    Plaintiff is informed and believes, and alleges thereon, that in engaging in the conduct described above, Gordon Young and Defendants acted with harassment, fraud and/or malice. The conduct of Defendants has been continuous and intentional and in conscious disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of Defendants' actions according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

## JURY DEMAND

A.      An order immediately and permanently enjoining Defendants, their officers, members, agents, servants, employees, attorneys, and all persons in active concert or participating with any of them, from:

      i.      advertising, marketing, promoting, selling or otherwise offering for sale any good or service under a name that is confusingly similar to Plaintiff's ADWEEK mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto;

      ii.      making or employing any other commercial use of Plaintiff's ADWEEK mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto;

      iii.      using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' services or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiff;

      iv.      using ADWEEK as a keyword, metatag or hashtag in any of its websites and domains;

      v.      doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead marketers, advertisers,

17

purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendants come from Plaintiff, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiff;

vi. otherwise competing unfairly with Plaintiff in any manner; and

vii. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (i) through (vi), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vi);

B. That a judgment be entered that Defendants have infringed Plaintiff's mark in violation of 15 U.S.C. § 1114 and have damaged Plaintiff's goodwill.

C. That a judgment be entered that Defendants have unfairly competed with Plaintiff by the acts complained of herein in violation of 15 U.S.C. § 1125(a).

D. That a judgment be entered that the acts of Defendants constitute unfair competition and trademark infringement in violation of the common law of the State of New York.

E. That Defendants be ordered to account and pay to Plaintiff all profits derived as a result of the activities complained of herein.

F. That Defendants be ordered to pay actual and compensatory damages for defamation according to proof, but, in any event, in the amount of at least $2,000,000 and for punitive and exemplary damages according to proof at trial.

G.     That Defendants be ordered to pay to Plaintiff damages as a direct and proximate result of all of the foregoing; Plaintiff has been damaged in an amount that is not as yet fully ascertained but which Plaintiff believes exceeds $2,000,000, according to proof at trial.

H.     That Defendants be ordered to pay increased damages due to their willful infringement.

I.      That Defendants be ordered to pay Plaintiff's reasonable attorneys' fees and costs incurred in this action.

J.     That Plaintiff be awarded such other and further relief as the Court may deem just and proper.


Plaintiff demands a trial by jury on all claims and issues so triable.


Dated:  Stamford, Connecticut          ST. ONGE STEWARD JOHNSTON & REENS LLC
            October 26, 2018


                                        s/*Jonathan A. Winter/*
                                        Gene S. Winter, Esq. (GW6798)
                                        Jonathan A. Winter, Esq. (JW4345)
                                        986 Bedford Street
                                        Stamford, Connecticut 06905-5619
                                        Telephone: (203) 324-6155
                                        Facsimile: (203) 327-1096
                                        Email: gwinter@ssjr.com
                                               jwinter@ssjr.com
                                               litigation@ssjr.com

                                        *Attorneys for Plaintiffs*